## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| ERIC CALL, an individual and resident of Anne Arundel County, CHRISTOPHER MEHL, an individual and resident of Calvert County; KYLE HARRISON, an individual and resident of Calvert County; FIREARMS POLICY COALITION, INC.; SECOND AMENDMENT FOUNDATION; MARYLAND SHALL ISSUE, INC., a resident of Baltimore County; and CITIZENS COMMITTEE FOR THE RIGHT TO KEEP AND BEAR ARMS, | : <br> : <br> : No. <br> : <br> : <br> : <br> : **COMPLAINT FOR DECLARATORY** <br> : **AND INJUNCTIVE RELIEF** <br> : <br> : |
|      Plaintiffs, | : <br> : |
| v. | : <br> : |
| WOODROW JONES III, in his official capacity as Secretary of State Police; BRIAN FROSH, in his official capacity as Attorney General of Maryland, | : <br> : <br> : <br> : |
|      Defendants. | : |

Plaintiffs ERIC CALL, CHRISTOPHER MEHL, KYLE HARRISON, FIREARMS POLICY COALITION, INC. ("FPC"), SECOND AMENDMENT FOUNDATION ("SAF"), MARYLAND SHALL ISSUE, INC. ("MSI"), and CITIZENS COMMITTEE FOR THE RIGHT TO KEEP AND BEAR ARMS ("CCRKBA") (collectively, "Plaintiffs"), by and through counsel of record, bring this complaint against Defendants, the Maryland state officials responsible for enforcing and implementing Maryland's laws and regulations limiting the carrying of firearms in public, and allege as follows:

### INTRODUCTION

1.    The Second Amendment to the United States Constitution guarantees "the right of the people to keep and bear Arms." U.S. Const. amend. II. Under this constitutional provision, Plaintiffs Call, Mehl, Harrison, and all other similarly situated individuals who are legally eligible

to possess and acquire firearms, have a fundamental, constitutionally guaranteed right to carry loaded, operable handguns on their person and outside their homes for the purpose of self-defense.

2.      But the State of Maryland has criminalized the carrying of handguns by ordinary citizens, making it wholly unlawful for law-abiding citizens to exercise their fundamental right to bear arms in public for self-defense without first satisfying the State that they have a "good and substantial reason" to do so. *See* Md. Code Ann., Pub. Safety § 5-306(a)(6)(ii); Md. Code Ann., Crim. Law § 4-203(c).

3.      Worse still, Maryland has made clear that a general desire to carry a handgun for the purpose of self-defense—"the *central component*" of the Second Amendment, *District of Columbia v. Heller*, 554 U.S. 570, 599 (2008)—is not a sufficiently good reason to exercise the right. Instead, according to Maryland, an ordinary citizen must provide *documented evidence* of *concrete threats* or recent assaults to obtain a permit from the state to carry a handgun in public. That restriction is akin to a state law concluding that the general desire to advocate for lawful political change is not a sufficiently "good and substantial reason" to exercise the right to free speech, and it cuts to the very core of the Second Amendment, no less than such a restriction would gut the First.

4.      The State's few exceptions to this broad criminal statute do not allow typical law-abiding citizens to carry a loaded and operable handgun outside their home. Crim. § 4-203(b). Indeed, the practical effect of Maryland's "good and substantial reason" requirement is to make it wholly illegal for *typical* law-abiding citizens to carry handguns in public—for by definition, these ordinary citizens cannot make the *atypical* showing that they face a specific, documented threat to their safety.

5.      The State of Maryland's laws, regulations, policies, practices, and customs

individually and collectively deny millions of individuals who reside in Maryland, including Plaintiffs, Plaintiffs' members and supporters, and others like them, their fundamental, individual right to bear loaded, operable handguns outside the home through oppressive criminal statutes combined with a handgun permit system that requires "good and substantial reason" and other subjective requirements that regular citizens cannot meet (the "Regulatory Scheme" [1]).

6.     To be sure, Plaintiffs acknowledge that the result they seek is contrary to *Woollard v. Gallagher*, 712 F.3d 865 (4th Cir. 2013), but, for the reasons explained in *Wrenn v. District of Columbia*, 864 F.3d 650 (D.C. Cir. 2017), that case was wrongly decided. They therefore institute this litigation to vindicate their Second Amendment rights and to seek to have *Woollard* overruled.

## JURISDICTION & VENUE

7.     This Court has subject-matter jurisdiction over all claims for relief pursuant to 28 U.S.C. §§ 1331 and 1343.

8.     Plaintiffs seek remedies under 28 U.S.C. §§ 1651, 2201, and 2202 and 42 U.S.C. §§ 1983 and 1988.

9.     Venue lies in this Court under 28 U.S.C. § 1391(b)(1) and (b)(2), as all Defendants reside within this District and the events giving rise to Plaintiffs' causes of action arose or exist in this District.

## PARTIES

1.     Plaintiff Eric Call is a natural person, a resident of Anne Arundel County, Maryland, an adult over the age of 21, a citizen of the United States, and legally eligible under federal and state law to possess and acquire firearms. Plaintiff Call is a member of Plaintiffs FPC, CCRKBA, and MSI.

---

[1] Crim. §§ 4-203(a)(1), (b)(1–9); Pub. Safety §§ 5-301–314; Md. Code Regs. 29.03.01–02.

2.      Plaintiff Christopher Mehl is a natural person, a resident of Calvert County, Maryland, an adult over the age of 21, a citizen of the United States, and legally eligible under federal and state law to possess and acquire firearms. Plaintiff Mehl is a member of Plaintiffs FPC, CCRKBA, MSI, and SAF.

3.      Plaintiff Kyle Harrison is a natural person, a resident of Calvert County, Maryland, an adult over the age of 21, a citizen of the United States, and legally eligible under federal and state law to possess and acquire firearms. Plaintiff Harrison is a member and supporter of Plaintiffs FPC, CCRKBA, MSI, and SAF.

4.      Plaintiff Firearms Policy Coalition, Inc. ("FPC") is a nonprofit organization incorporated under the laws of Delaware with a place of business in Sacramento, California. The purposes of FPC include defending and promoting the People's rights, especially, but not limited to, the Second Amendment right to keep and bear arms, advancing individual liberty, and restoring freedom. FPC serves its members and the public through legislative advocacy, grassroots advocacy, litigation and legal efforts, research, education, outreach, and other programs. FPC brings this action on behalf of itself, its members, and supporters who possess all the indicia of membership, who seek to exercise their right to carry firearms outside their homes in public for self-defense and in case of confrontation. FPC has been adversely and directly harmed in having expended and diverted organizational resources to defend the fundamental rights of its members and supporters, including Plaintiffs Call, Mehl, and Harrison, against Defendants' Regulatory Scheme, including through this action.

5.      Plaintiff Second Amendment Foundation ("SAF") is a nonprofit educational foundation incorporated in 1974 under the laws of Washington with its principal place of business in Bellevue, Washington. SAF is a 501(c)(3) organization under Title 26 of the United States Code.

SAF's mission is to preserve the individual constitutional right to keep and bear arms through public education, judicial, historical and economic research, publishing, and legal-action programs focused on the civil right guaranteed by the Second Amendment to the United States Constitution. SAF has members and supporters nationwide, including in Maryland. SAF brings this action on behalf of itself, its members, and supporters who possess all the indicia of membership, who seek to exercise their right to carry loaded firearms outside their homes for self-defense in case of confrontation.

6.      Plaintiff Maryland Shall Issue, Inc. ("MSI") is a nonprofit organization incorporated under the laws of Maryland with its principal place of business in Baltimore, Maryland. MSI seeks to preserve the effectiveness of the Second Amendment through advocacy, education, research, publishing, and legal-action programs focused on the constitutional right to keep and bear arms, and the consequences of gun control. MSI has approximately 1,700 members in Maryland. As part of its mission, MSI specifically promotes the right and ability of law-abiding residents of Maryland to carry a handgun outside the home for lawful self-defense purposes. MSI brings this action on behalf of itself, and on behalf of its members and supporters who possess all the indicia of membership, who seek to exercise their right to carry loaded handguns outside their homes for lawful self-defense in case of confrontation. As an entity, MSI has been adversely and directly harmed in having expended and diverted organizational resources to defend the fundamental rights of its members and supporters, including Plaintiffs Call, Mehl, and Harrison, against Defendants' Regulatory Scheme, including through this action. That Scheme has also substantially and continuously impaired MSI's ability to provide services to its members and the public, as the existence of Defendants' Regulatory Scheme has required MSI to divert substantial resources from its mission to address the restrictions and limitations imposed by the Scheme. By

severely limiting the right of law-abiding MSI members and the public to carry a handgun outside the home for lawful self-defense, Defendants' Regulatory Scheme has also undermined MSI's ability to attract new members and has made the retention of existing members more difficult, all of which impair MSI's ability to carry out its mission.

7.      Plaintiff Citizens Committee for the Right to Keep and Bear Arms ("CCRKBA") is a nonprofit organization incorporated in 1970 under the laws of Washington with its principal place of business in Bellevue, Washington. CCRKBA is a 501(c)(4) social welfare organization. CCRKBA seeks to preserve the civil right of the individual to keep and bear arms guaranteed by the Second Amendment through grassroots and indirect advocacy, education, research, publishing, and legal action focused on the Second Amendment to the United States Constitution, and the consequences of denial of this right. CCRKBA has members and supporters nationwide, including in Maryland. CCRKBA brings this action on behalf of itself, its members and supporters who possess all the indicia of membership, who seek to exercise their right to carry loaded firearms outside their homes for self-defense in case of confrontation.

8.      Defendant Woodrow Jones III is the Secretary of State Police for the State of Maryland. In such capacity, Defendant Jones executes and administers the State's laws, including the Regulatory Scheme, Crim. § 4-203(a)(1), Pub. Safety § 5-306(a)(6)(ii), and the related regulations, policies, practices, and customs designed to enforce and implement the same. Defendant Jones is therefore responsible for the determinations of whether each such private citizen application has satisfied the statutory requirements for a handgun permit, including with respect to the applications of Plaintiffs Call, Mehl, and Harrison. Defendant Jones has enforced and continues to enforce the "good and substantial reason" requirement against Plaintiffs Call, Mehl, and Harrison and other similarly situated individuals in the State of Maryland, resulting in

their ongoing inability to obtain a permit to carry handguns. Defendant Jones is sued in his official capacity.

9.      Defendant Brian Frosh is the elected Attorney General of the State of Maryland. In such capacity, Defendant Frosh is the head of the State's Office of the Attorney General, Md. Code Ann., State Gov't § 6-104, whose office holds statewide criminal jurisdiction to investigate and prosecute any indictable offense, including alleged violations of the laws at issue in this action, upon request of the Governor or upon the request of the General Assembly. Md. Const. art. V, § 3. Defendant Frosh is sued in his official capacity.

## FACTUAL ALLEGATIONS

## I.      MARYLAND'S UNCONSTITUTIONAL REGULATORY SCHEME

10.     In the State of Maryland, an ordinary, law-abiding citizen may not "wear, carry, or transport a handgun, whether concealed or open, on or about the person." Crim. § 4-203(a)(1)(i). A person who violates this provision commits a misdemeanor offense and is subject to severe criminal sanctions, including imprisonment for up to three years for the first offense. *Id.* § 4-203(c)(1)–(2). These provisions do not apply "to a person to whom a permit to wear, carry, or transport the handgun has been issued under Title 5, Subtitle 3 of the Public Safety Article." *Id.* § 4-203(b)(1)–(2). Under federal law, 18 U.S.C. § 922(g)(1) and 18 U.S.C. § 921(a)(20), any conviction under these provisions would result in a lifetime federal firearms disability. Knowing violation of this disability, including by possession affecting interstate commerce of a firearm, is punishable by up to ten years' imprisonment under federal law. 18 U.S.C. § 924(a)(2). The same lifetime disability and similar penalties are imposed under Maryland law. *See* Pub. Safety §§ 5-101(g)(3), 5-133(b)(1), 5-205(b)(1).

11.     Maryland's general prohibition against carrying a handgun without a permit applies to everyone except those who fall within one of the specifically exempted categories of people,

primarily on-duty military personnel, law enforcement officers, and some other government officials. *See* Crim. § 4-203(b)(1).

12.     Ordinary citizens, who do not have a carry permit, can only possess handguns: 1) from the place of purchase of sale or repair; 2) between *bona fide* residences or places of business (if the business is "operated and owned substantially" by the person and the handgun is unloaded); 3) to a military activity, target shooting, or hunting, if the gun is unloaded and in an enclosed case; 4) to a gun collection; or 5) on real estate owned by the person. *Id.* § 4-203(b)(2)– (6). For nearly all of these exceptions, the handgun must be both "unloaded and carried in an enclosed case or an enclosed holster," precluding its use for immediate, effective self-defense in case of confrontation. *Id.* § 4-203(b)(3)–(5).

13.     Apart from these minor exceptions, Maryland law allows an individual to carry a handgun in public only if he first obtains "a permit to wear, carry, or transport the handgun" from the Maryland Secretary of State Police, Defendant Jones. *Id.* § 4-203(b)(2). Maryland law states that "[a] person shall have a permit issued under this subtitle before the person carries, wears, or transports a handgun." Pub. Safety § 5-303. Permit applications are submitted under oath to the Secretary, who may charge $75 for an initial application and $50 for a renewal. *Id.* § 5-304.  Permit applicants are subject to an extensive background check. *Id.* § 5-305.  For the average citizen to qualify for a permit to carry, he or she must not have a criminal conviction with a sentence longer than one year; not have any conviction of a crime involving "possession, use or distribution of a controlled dangerous substance"; not be "an alcoholic, addict, or habitual user of a controlled dangerous substance"; have completed prior to application a 16-hour firearms training course, including live-fire qualification component, approved by the Secretary of Police; and not have "exhibited a propensity for violence or instability that may reasonably render the person's

possession of a handgun a danger to the person or another." *Id.* § 5-306(a)(1)–(6).

14.      In addition to these rigorous screening and training requirements, the Secretary may issue a handgun carry permit only if he determines that the applicant "has good and substantial reason to wear, carry, or transport a handgun, such as a finding that the permit is necessary as a reasonable precaution against apprehended danger." *Id.* § 5-306(a)(6)(ii). The Secretary may also, in his discretion, "limit the geographic area, circumstances, or times of the day, week, month, or year in which a permit is effective," *id.* § 5-307, and such restrictions have the force of law, Crim. § 4-203(b)(2).

15.      Defendant Jones has issued regulations implementing his power and authority over handgun carry permits. *See* Md. Code Regs. 29.03.01 *et seq.* Those regulations provide that the investigation into an application for a handgun carry permit must determine "[t]he reasons given by the applicant for carrying, wearing, or transporting a handgun, and whether those reasons are good and substantial," and "[w]hether the permit is necessary as a reasonable precaution for the applicant against apprehended danger." *Id.* 29.03.02.03(B)(12), (13).

16.      Defendant Jones has designated the responsibility of issuing permits to the Handgun Permit Unit of the Licensing Division of the Maryland State Police. The Permit Unit determines whether the applicant has "good and substantial reason" for issuing the permit. *Id.* 29.03.02.04(G), (L), (O). It has promulgated a "Standard Operating Procedure" or "SOP" listing the "categories" for determining "good and substantial reason" to issue a permit:

> (1) Personal Protection
> (2) Assumed Risk Positions
> (3) Federal Employees or Contractors who possess an active "Top Secret" or higher security clearance
> (4) Business Activities
> (5) Private Security Officers,
> (6) Private Organization Security Team Member
> (7) Regulated Professions

       a. Licensed Security Guard,
       b. Licensed Private Detective
       c.  Armored Car Driver
       d. Special Police Officer

Maryland State Police, SOP 29-19-004 at 4-5 (Aug. 5, 2019) ("SOP").

17.     For those applicants who are not employed in one of the favored professions and are looking to carry a handgun for personal protection, the Permit Unit requires an applicant to show that there is a special need for personal protection. Maryland state courts have held that living in a high-crime neighborhood or being subject to "vague threat[s]" is *not* sufficient "good and substantial reason" to obtain a permit—since, if they were, "[e]ach person *could decide for himself or herself* that he or she was in danger." *Snowden v. Handgun Permit Rev. Bd. of Md. Dep't of Pub. Safety & Corr. Serv's.*, 413 A.2d 295, 298 (Md. Ct. Spec. App. 1980) (emphasis added); *see also Scherr v. Handgun Permit Rev. Bd.*, 880 A.2d 1137, 1148–49 (Md. Ct. Spec. App. 2005). The Permit Unit continues to rely on these state court decisions as authoritative. *Handgun Wear and Carry Permit*, Maryland State Police, https://mdsp.maryland.gov/Organization/Pages/ CriminalInvestigationBureau/LicensingDivision/Firearms/WearandCarryPermit.aspx?View=%7 Bd916bb38-9fb0-4be4-83fb-647a71f71634%7D&SortField=Doc_x0020_Title&SortDir=Desc (last visited Nov. 12, 2020).

The Permit Unit thus defines "personal protection" for purposes of a permit:

> a good and substantial reason for the wearing, carrying or transporting of a handgun for an individual who is at significant risk of danger from another individual(s) and where the individual's apprehended fear of reprisal is based on more than his/her personal anxiety and *beyond that of the average citizen* that he/she is being targeted by individuals wishing to cause him/her harm.

SOP at 2 (emphasis added).  The Permit Unit further requires documentation in order to determine whether a permit may be issued for "personal protection," including "[c]opies of documented evidence that the applicant's life is in imminent danger or is currently being targeted

by individuals wishing to do the applicant harm. Documents may include, but may not be limited to: police reports, court documents, orders of protection or other documentation." SOP at 6. If, in the subjective opinion of the Permit Unit, an applicant does not show "good and substantial reason" to carry a handgun by evidencing a sufficient need for "personal protection," the permit application for personal protection is denied.

18.     If a permit application is denied by the Secretary (or the Secretary's designee), the applicant may request the Secretary to conduct an informal review by filing a written request within 10 days after receipt of written notice of the Secretary's initial action. Pub. Safety § 5-311(a). The Secretary then has 30 days to sustain, reverse, or modify the initial action after receipt of the request for informal review. *Id.* § 5-311(c). Alternatively, a person who is denied a permit (or renewal of a permit) may request a review of the decision by the Office of Administrative Hearings "by filing a written request with the Secretary and the Office of Administrative Hearings within 10 days after receipt of written notice of the Secretary's final action." *Id.* § 5-312(a)(1). On information and belief, the Office of Administrative has have overturned very few, if any, denials of carry permits.

19.     On information and belief, due to the onerous nature of Defendants' Regulatory Scheme, only a tiny fraction of a percent of Maryland citizens are able to obtain permits to carry handguns, and indeed, most people simply never apply because it is well known throughout the State that the "good and substantial reason" standard effectively renders the process an exercise in futility for all ordinary law-abiding citizens, thus further chilling and denying exercise of the right.

## II.     THE EFFECT ON PLAINTIFFS

20.     Before October 2020, Plaintiff Call submitted a completed application for a permit to carry a handgun to Defendant Jones, the Secretary of State Police.

21.     Plaintiff Call does not have any concrete evidence of specific threats to his safety.

He does, however, desire to carry a handgun in public for the purpose of self-defense, and he included with his application a statement that he had "good and substantial reason" to carry a pistol. He is a military engineer whose personal and family information has been disclosed to the public in a data breach, and he fears that being in the military makes him and his family a target.

22.     Plaintiff Call possesses all of the qualifications to obtain a Handgun Carry Permit that are enumerated in section 5-306(a)(1)–(5) of the Public Safety article of the Maryland Code. He is on active duty in the armed forces, and he has completed basic and advanced firearms qualifications. He also has a permit to carry a concealed weapon in Virginia.

23.     Nevertheless, on or around October 15, 2020, Plaintiff Call received notice from Defendant Jones that he had been denied a handgun carry permit for lack of "good and substantial reason" under the Regulatory Scheme.

24.     Plaintiff Call lawfully owns a handgun and intends and desires to exercise his right to keep and bear arms by carrying on his person a loaded, operable handgun for lawful purposes, including self-defense, outside his home, in case of confrontation, throughout the State of Maryland. Plaintiff Call would carry a handgun for self-defense when he is in public, including when he is traveling back and forth to base, were it not for Defendants' enforcement of Maryland's ban on the public carrying of handguns. In light of Defendants' denial of his application, however, Plaintiff Call continues to refrain from carrying a handgun outside the home for self-defense in Maryland.

25.     Similarly, in or around March 2020, Plaintiff Mehl submitted a completed application for a permit to carry a handgun to Defendant Jones.

26.     Plaintiff Mehl does not have any concrete evidence of specific threats to his safety. He does, however, desire to carry a handgun in public for the purpose of self-defense, and he

included with his application a statement that he had "good and substantial reason" to carry a pistol. Plaintiff Mehl has completed an approved firearms training course, and he previously was granted a handgun carry permit by the State in 2018.

27.     Plaintiff Mehl possesses all of the qualifications to obtain a Handgun Carry Permit that are enumerated in section 5-306(a)(1)–(5) of the Public Safety article of the Maryland Code.

28.     Nevertheless, on or about July 11, 2020, Plaintiff Mehl received notice from Defendant Jones that he had been denied a handgun carry permit for lack of "good and substantial reason" under the Regulatory Scheme.

29.     Plaintiff Mehl lawfully owns a handgun and intends and desires to exercise his right to keep and bear arms by carrying on his person a loaded, operable handgun for lawful purposes, including self-defense, outside his home, in case of confrontation, throughout the State of Maryland. Plaintiff Mehl would carry a handgun for self-defense when he is in public, were it not for Defendants' enforcement of Maryland's ban on the public carrying of handguns. In light of Defendants' denial of his application, however, Plaintiff Mehl continues to refrain from carrying a handgun outside the home for self-defense in Maryland.

30.     Plaintiff Kyle Harrison likewise submitted a completed application for a permit to carry a handgun to Defendant Jones.

31.     Plaintiff Harrison does not have any concrete evidence of specific threats to his safety. He does, however, desire to carry a handgun in public for the purpose of self-defense, and he included with his application a statement that he had "good and substantial reason" to carry a pistol. Plaintiff Harrison is a qualified handgun instructor, and he included evidence that he completed prior to the application a firearms training course approved by the Secretary. *Cf.* Pub. Safety § 5-306(a)(5) & (b) (3) (requiring only one or the other).

32.     Plaintiff Harrison possesses all of the qualifications to obtain a Handgun Carry Permit that are enumerated in sections 5-306(a)(1)–(5) of the Public Safety article of the Maryland Code.

33.     Nevertheless, on or about October 1, 2020, Plaintiff Harrison received notice from Defendant Jones that he had been denied a handgun carry permit for lack of "good and substantial reason" under the Regulatory Scheme.

34.     Plaintiff Harrison lawfully owns a handgun and intends and desires to exercise his right to keep and bear arms by carrying on his person a loaded, operable handgun for lawful purposes, including self-defense, outside his home, in case of confrontation, throughout the State of Maryland. Plaintiff Harrison would carry a handgun for self-defense when he is in public, were it not for Defendants' enforcement of Maryland's ban on the public carrying of handguns. In light of Defendants' denial of his application, however, Plaintiff Harrison continues to refrain from carrying a handgun outside the home for self-defense in Maryland.

35.     Plaintiffs FPC, SAF, MSI, and CCRKBA have members and supporters in Maryland who intend and desire to exercise their right to keep and bear arms by carrying on their person a loaded, operable handgun for lawful purposes, including self-defense, outside his home, in case of confrontation.

36.     But for Maryland's unconstitutional Regulatory Scheme, including the "good and substantial reason" requirement, the Defendants' enforcement thereof, and the severe lifelong and criminal penalties associated with violations of the Regulatory Scheme, Plaintiffs Call, Mehl, and Harrison, all members and supporters of Plaintiffs FPC, CCRKBA, MSI, or SAF, and other similarly situated individuals in Maryland would exercise their right to keep and bear arms by carrying on their person a loaded, operable handgun for lawful purposes, including self-defense,

outside his home, in case of confrontation, without the fear or risk of arrest and prosecution, and the loss of their right to keep and bear arms for engaging in constitutionally protected lawful conduct.

## III.   DEFENDANTS' LAWS AND REGULATIONS VIOLATE THE SECOND AMENDMENT.

37.   The Second Amendment to the United States Constitution provides: "A well-regulated Militia being necessary to the security of a free State, the right of the people to keep and bear Arms shall not be infringed."

38.   The Fourteenth Amendment to the United States Constitution provides: "No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

39.   The Second Amendment is fully applicable to the States through the Fourteenth Amendment. *McDonald v. City of Chicago*, 561 U.S. 742, 750 (2010); *id.* at 805 (Thomas, J., concurring).

40.   "The very enumeration of the right [to keep and bear arms] takes out of the hands of government—even the Third Branch of Government—the power to decide on a case-by-case basis whether the right is *really worth* insisting upon." *Heller*, 554 U.S. at 634.

41.   "Constitutional rights are enshrined with the scope they were understood to have when the people adopted them, whether or not future legislatures or (yes) even future judges think that scope too broad." *Id.* at 634–35.

42.   In *Heller*, the Supreme Court held that the Second Amendment "guarantee[s] the individual right to possess and carry weapons in case of confrontation." *Id.* at 592.

43.   This is " 'a natural right which the people have reserved to themselves, confirmed

by the Bill of Rights.' " *Id.* at 594 (quoting A Journal of the Times: Mar. 17, New York Journal, Supp. 1, Apr. 13, 1769).

44.     And the meaning of the right during the founding era—which the Supreme Court has commanded must still control today—"unambiguously" "refer[red] to the carrying of weapons outside of an organized militia." *Id.* at 584. It is clear that, "[a]t the time of the founding, as now, to 'bear' meant to 'carry.' " *Id.*

45.     *Heller* commands that the fundamental right to *bear* arms for self-defense and in case of confrontation—as part and parcel of "the natural right of resistance and self-preservation," *id.* at 594—is of particular importance when it comes to ensuring citizens' ability to carry *handguns* for such purposes, because the court explicitly recognized the handgun as "the quintessential self-defense weapon" in this country, and that any prohibition against their carry and use by law-abiding persons is necessarily invalid. *Id.* at 629.

46.     Assuming applicants are not disqualified from exercising Second Amendment rights, the State must issue a permit to them to carry their loaded handguns in public in exercise of their right to bear arms.

47.     When seconds count, the police are minutes or hours away, if they come at all— they certainly have no obligation to, *see, e.g.*, *Castle Rock v. Gonzales*, 545 U.S. 748 (2005)—the Regulatory Scheme, and the Defendants' enforcement of it, disarms and leaves effectively defenseless the very same people to whom the Constitution guarantees the right to keep and bear arms for self-defense.

48.     The already unconstitutional restrictions and burdens imposed by the Regulatory Scheme are especially onerous now in light of the current public health crisis and the associated psychological and economic pressures increasing the potential of crime and civil unrest.

49.     Plaintiffs Call, Mehl, and Harrison are accordingly even more concerned about their safety and the safety of their families, and they more than ever seek and desire to exercise lawfully their right to bear arms by carrying a loaded, operable handgun—"the quintessential self-defense weapon" in the United States—for lawful purposes including self-defense in case of confrontation while outside the limited confines of their homes.

50.     The right to carry firearms, and particularly handguns, guaranteed under the Bill of Rights cannot be subjected to laws and regulations that prevent ordinary citizens from exercising that right, such as those "permitting" programs under which state authorities condition the exercise of this right on requirements that typical law-abiding citizens cannot satisfy.

51.     Such regulatory schemes necessarily cannot operate to prohibit ordinary law-abiding citizens from carrying their handguns in public, and also prevent them from obtaining the "permit" necessary under state law to lawfully exercise the fundamental right to carry on their person loaded, operable handguns in public for self-defense and in case of confrontation—particularly when such schemes place these citizens under constant threat of criminal sanction for violating them.

52.     The enshrinement of the right to keep and bear arms in the Second Amendment has necessarily taken such "policy choices off the table." *Heller*, 554 U.S. at 636.

53.     Yet, this is precisely how the Regulatory Scheme in Maryland operates, completely shutting out ordinary law-abiding citizens from exercising their rights in the State.

## **COUNT ONE**

**42 U.S.C. § 1983 Action for Deprivation of Plaintiffs' Rights under the Second and Fourteenth Amendments of the U.S. Constitution**

54.     Plaintiffs incorporate herein by reference the foregoing paragraphs as if fully set forth herein.

55. There is an actual and present controversy between the parties.

56. The Second and Fourteenth Amendments to the United States Constitution guarantee adult citizens of States their fundamental right to keep and bear arms, both in the home and in public.

57. The keeping and bearing of arms is a fundamental right that is necessary to our system of ordered liberty, and is additionally a privilege and immunity of citizenship, protected by the Fourteenth Amendment.

58. The right to keep and bear arms includes, but is not limited to, the right of individuals to acquire and carry loaded, operable handguns on their person in public for all lawful purposes including self-defense and in case of confrontation, outside the confines of their homes, personal vehicles, and workplaces.

59. This Second Amendment right to bear arms in public cannot be subject to a government official's discretionary determination of whether a law-abiding citizen has a "good and substantial reason" to exercise that right.

60. A government restriction that limits the right to bear arms in public to only those few, favored citizens who can demonstrate a specific, clear, and present threat to their safety effectively operates as a flat ban on the carrying of handguns by *typical* law-abiding citizens, who by definition cannot demonstrate this kind of *atypical* need to bear arms.

61. 42 U.S.C. § 1983 creates a cause of action against state actors who deprive individuals of federal constitutional rights under color of state law.

62. Defendants, individually and collectively, and under color of State law at all relevant times, have deprived the fundamental constitutional rights, privileges, and immunities of citizenship of adult persons in the State of Maryland, including Plaintiffs Call, Mehl, and Harrison,

all similarly situated members and supporters of Plaintiffs FPC, CCRKBA, MSI, or SAF, and all other similarly situated individuals, through Defendants' enforcement and implementation of the Regulatory Scheme, including the "good and substantial reason" requirement, which has denied, and will continue to deny and prevent by criminal sanction, the exercise of the fundamental right to bear arms in public for self-defense and in case of confrontation unless and until redressed through the relief Plaintiffs seek herein.

63.     For all the reasons asserted herein, Defendants have acted in violation of, and continue to act in violation of, 42 U.S.C. § 1983, compelling the relief Plaintiffs seek.

## PRAYER FOR RELIEF

64.     WHEREFORE, Plaintiffs respectfully pray for the following relief:

a.      A declaratory judgment that Plaintiffs Call, Mehl, and Harrison, all similarly situated members of Plaintiffs FPC, CCRKBA, MSI, or SAF, and all other similarly situated individuals who are not prohibited from acquiring and possessing firearms under federal and state laws, have a fundamental right to bear arms, including by carrying loaded, operable, handguns, on their person and for all other lawful purposes including self-defense and in case of confrontation, inside and outside their homes, in public, as guaranteed under the Second and Fourteenth Amendments to the United States Constitution;

b.      A declaratory judgment that the Regulatory Scheme, including the "good and substantial reason" requirement, and all related regulations, policies, and/or customs designed to enforce or implement the same, prevent Plaintiffs Call, Mehl, and Harrison, all similarly situated members of Plaintiffs FPC, CCRKBA, MSI, or SAF, and all other similarly situated individuals from exercising their fundamental right to bear arms, including loaded, operable, handguns, on their person for self-defense and in case of

confrontation, and for all other lawful purposes, inside and outside their homes, in public, as guaranteed under the Second and Fourteenth Amendments to the United States Constitution;

c.      A declaratory judgment that the State's carry permit application requirements, and in particular the "good and substantial reason" requirement, and other subjective requirements in section 5-309(a) of the Public Safety article of the Maryland Code that go beyond a person's legal eligibility to possess and acquire firearms, are unconstitutional under the Second and Fourteenth Amendments to the United States Constitution;

d.      A preliminary and permanent injunction prohibiting each Defendant, each Defendant's respective employees, officers, agents, and representatives, all those acting in concert or participation with him or her, and all who have notice of the injunction, from enforcing the Regulatory Scheme and all related regulations, policies, and/or customs designed to enforce or implement the same, against Plaintiffs Call, Mehl, and Harrison, or any similarly situated member of Plaintiffs FPC, CCRKBA, MSI, or SAF, thus allowing Plaintiffs to exercise their fundamental right to keep and bear arms, including loaded, operable handguns, on their person for all lawful purposes, including self-defense and in case of confrontation, inside and outside their homes, in public, as guaranteed under the Second and Fourteenth Amendments to the United States Constitution;

e.      An order requiring Defendants and their respective employees, officers, and agents, and all those with such powers delegated to them, to issue a handgun carry permit to Plaintiffs Call, Mehl, and Harrison, and to any similarly situated member of Plaintiffs FPC, CCRKBA, MSI, or SAF, upon application as long as they are not subject to any

firearm disability under applicable state and federal laws, and attest or otherwise show familiarity in the safe handling and use of handguns, including at the time of application.

       f.      Attorney's fees, expert fees, and costs pursuant to 42 U.S.C. § 1988, and any other applicable law; and,

       g.      Any and all other and further legal and equitable relief against Defendants as necessary to effectuate the Court's judgment, or as the Court otherwise deems just and proper.

Dated: November 13, 2020

Respectfully submitted,

s/ Nicole J. Moss
Nicole J. Moss, Bar No. 20222
   *Attorney of Record*
David H. Thompson*
Peter A. Patterson*
John D. Ohlendorf*
COOPER & KIRK, PLLC
1523 New Hampshire Avenue, N.W.
Washington, D.C. 20036
(202) 220-9600
(202) 220-9601 (fax)
nmoss@cooperkirk.com

Raymond M. DiGuiseppe*
law.rmd@gmail.com
The DiGuiseppe Law Firm, P.C.
4320 Southport-Supply Road, Suite 300
Southport, North Carolina 28461
Phone: 910-713-8804
Fax: 910-672-7705

Adam Kraut, Esq.*
Firearms Policy Coalition
1215 K Street, 17th Floor
Sacramento, CA 95814
(916) 476-2342
akraut@fpclaw.org

   *Pro hac vice* application forthcoming

Attorneys for Plaintiffs