IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT COURT OF MARYLAND

| | | |
|---|---|---|
| ERIC CALL, et al., | * | |
| *Plaintiffs,* | * | |
| v. | * | Civil Case No. 1:20-cv-3304-DKC |
| WOODROW JONES III, et al., | * | |
| *Defendants.* | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

## DEFENDANTS' MEMORNDUM IN SUPPORT OF
## MOTION TO DISMISS THE COMPLAINT

Defendants Woodrow Jones III, Secretary of the Maryland Department of State Police, and Brian Frosh, Attorney General of Maryland, have moved to dismiss the complaint in this action for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6). The plaintiffs' claim — that Maryland's requirement that individuals seeking a permit to carry a handgun must demonstrate a "good and substantial reason" to do so violates the Second Amendment to the United States Constitution — fails to state a claim upon which relief can be granted because the Fourth Circuit Court of Appeals in *Woollard v. Gallagher*, 712 F.3d 865 (4th Cir. 2013) held that the application of the "good and substantial reason" requirement did not violate the Second Amendment. Because the Fourth Circuit's decision in *Woollard* is controlling here, the complaint must be dismissed with prejudice.

1

## FACTUAL BACKGROUND

Subject to numerous exceptions, Maryland law generally makes it a misdemeanor to wear, carry, or transport a handgun on one's person or in a vehicle. Md. Code Ann., Criminal Law ("CL") § 4-203(a).[1] Exceptions include the wear, carry, or transport of a handgun:

- in one's home or business or on property one owns, CL § 4-203(b)(6);

- in connection with, among other activities, hunting, trapping, a target shoot, formal or informal target practice, a sport shooting event, certain firearms and hunter safety classes, or an organized military activity, CL § 4-203(b)(4);

- in the moving of a gun collection for exhibition by a bona fide gun collector, CL § 4-203(b)(5);

- by a supervisory employee in the course of business under certain conditions, CL § 4-203(b)(7); and

- while transporting the handgun between places or activities where the individual is allowed to possess it, CL § 4-203(b)(3).

Maryland law generally requires an individual who wants to wear and carry a handgun: (i) in public; (ii) outside of these and other protected places; and (iii) apart from these and other protected activities, to apply for a permit to do so. CL § 4-203(b)(2).

An individual is eligible to obtain a handgun wear and carry permit (a "Permit") if that person is an adult who has not been convicted of certain criminal offenses, is not presently an alcoholic, addict, or habitual drug user, and, based on an investigation by the MSP: (1) has not exhibited a propensity for violence or instability that may render his/her

---

[1] The criminal and permit statutes relevant to this case apply only to handguns. Maryland's permit laws do not apply to other firearms, including rifles, shotguns, or other "long guns."

2

possession of a handgun a danger; and (2) "has good and substantial reason to wear, carry, or transport a handgun, such as a finding that the permit is necessary as a reasonable precaution against apprehended danger." Md. Code Ann, Public Safety ("PS") § 5-306(a) (the "Permit Statute"). It is the last of these conditions, the good and substantial reason requirement, that Plaintiffs challenges in this lawsuit.

Plaintiffs Call, Mehl and Harrison applied for and were denied a permit on the basis that they did not have a "good and substantial reason" to wear, carry or transport a handgun. Complaint ¶¶ 20, 23, 25, 28, 30, 33. The organization Plaintiffs have members who intend and desire to keep and bear arms outside the home. Complaint ¶ 35.

The plaintiffs assert that the "good and substantial reason" requirement effectively bans typical law-abiding citizens of Maryland from carrying handguns outside the home for self-defense and so violates the Second Amendment.

## STANDARD OF REVIEW

To survive a motion to dismiss for failure to state a claim on which relief can be granted, "a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Although the Court is required to "'take the facts in the light most favorable to the plaintiff,'" the Court "need not accept legal conclusions couched as facts or 'unwarranted inferences, unreasonable conclusions, or arguments.'" *Wag More Dogs, LLC v. Cozart*, 680 F.3d 359, 365 (4th Cir. 2012) (quoting *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008) (internal citation

omitted)). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 679.

## ARGUMENT

### THE PLAINTIFFS' CHALLENGE TO THE "GOOD AND SUBSTANTIAL REASON" REQUIREMENT OF MARYLAND'S HANDGUN PERMIT LAW FAILS TO STATE A CLAIM ON WHICH RELIEF CAN BE GRANTED BECAUSE IT IS FORECLOSED BY THE *WOOLLARD* DECISION.

Plaintiffs acknowledge that goal that they seek is contrary to the ruling in *Woollard*. Complaint ¶ 6. However, they argue that *Woollard* should be overruled in light of the decision in *Wrenn v. District of Columbia*, 864 F.3d 650 (D.C. Cir. 2017) and are seeking a declaration from this court that Maryland's "good and substantial reason" requirement violates the Second Amendment. Plaintiffs cannot be granted the relief they seek.

This court is bound by applicable Fourth Circuit precedent, and the holding in *Woollard* is clearly controlling in this case. Woollard, like the plaintiffs here, argued that the "good and substantial reason requirement" for obtaining a permit violated the Second Amendment. The Fourth Circuit assumed that Woollard's Second Amendment right was burdened by the "good and substantial reason" requirement, but held that the State had demonstrated that the requirement "is reasonably adapted to Maryland's significant interests in protecting public safety and preventing crime" and satisfied the applicable intermediate scrutiny standard. 712 F. 3d at 882.

The application of the *Woollard* decision forecloses plaintiffs' challenge. Moreover, a re-evaluation of *Woollard* in light of the D.C. Circuit's decision in *Wrenn*, is unnecessary. *Wrenn* held that the individual right to carry common firearms beyond the

4

home for self-defense falls within the core of the Second Amendment's protections. The Fourth Circuit in *Woollard* declined to decide the scope of the Second Amendment's protection outside of the home, noting that in *District of Columbia v. Heller*, 554 U.S. 570 (2008), the Supreme Court focused on "the right of law-abiding, responsible citizens to use arms in defense of hearth and home" as the "core protection" of the Second Amendment. 712 F.3d at 874-876. Instead, the court assumed for purposes of its decision that the protection of the Second Amendment did extend outside of the home and that Woollard's rights under the Second Amendment had been infringed. The *Woollard* court, relying on *United States v. Chester*, 628 F.3d 673 (4th Cir. 2010) and *United States v. Masciandaro*, 638 F.3d 458 (4th Cir. 2011), then correctly determined that the applicable standard of constitutional review for Maryland's handgun permit law (which concerns the ability to carry a handgun outside the home) was intermediate scrutiny and that Maryland's law satisfied that standard. Plaintiff's assertion that *Woollard* should be reconsidered and overruled, in light of the *Wrenn* decision, is unwarranted.

Although the Fourth Circuit's controlling *Woollard* decision requires that this Court dismiss the complaint with prejudice, it is worthwhile to note that subsequent published studies present additional compelling support for the Fourth Circuit's holding that there exists a "reasonable fit" between Maryland's "good and substantial reason" requirement and the governmental objectives of protecting public safety and preventing crime. In bringing this action, Plaintiffs are seeking to convert Maryland to a "shall issue" state, where licensing officials have little to no discretion and where applicants need not show "good and substantial reason" to have an unrestricted license to carry concealed handguns

in public.  Recent studies have shown, however, that violent crime increases 12.3% after states move from laws requiring a showing of a need to carry firearms in public places to a more permissive system, with the effect increasing by 1.1% each year thereafter. John Donohue Study discussed in Webster, et al. *Firearms on College Campuses: Research Evidence and Policy Implications* (2016) (available at https://www.jhsph.edu/research/centers-and-institutes/johns-hopkins-center-for-gun-policy-and-research/ pdfs/GunsOnCampus.pdf).  Another comprehensive study found that shall-issue laws increase violent crime and murder, including a 13-15% increase in violent crime after ten years and small increases in property crime and homicide. John Donohue, *Right to Carry laws and Violent Crime: a Comprehensive Assessment Using Panel Data and a State Level Synthetic Controls Analysis* (2017).  Shall-issue laws are also associated with an increase in aggravated assault generally and a 33% increase in gun-related aggravated assault. Abhey Aneja & John Donohue, *The Impact of Right to Carry Laws and the NRC report: the Latest Lessons for the Empirical Evaluation of Law and Policy* (2012) (available at http://www.nber.org/papers/w18294.pdf).

Other recent empirical evidence also strongly demonstrates that licensing laws regulating the public carrying of guns, like Maryland's, substantially advance the state's compelling interests in protecting its citizens from gun violence. Research shows that handgun permit and licensing laws are "[t]he type of firearm policy most consistently associated with curtailing the diversion of guns to criminals and for which some evidence indicates protective effects against gun violence." Daniel W. Webster & Garen J. Wintemute, *Effects of Policies Designed to Keep Firearms from High-Risk Individuals*, 36

Ann. Rev. Pub. Health 21, 34 (2015) (available at https://www.annualreviews.org/doi/full/10.1146/annurev-publhealth-031914-122516). The vast majority of firearms-related homicides — approximately 90% in 2015 — were committed with handguns. States where handgun licensing laws leave licensing officials with little or no discretion (referred to as "shall-issue states") are associated with significantly higher rates of total (6.5%), firearm-related (8.6%), and handgun-related (10.6%) homicide when compared with "may-issue" states like Maryland. *See, e.g.*, Michael Siegel, et. al., *Easiness of Legal Access to Concealed Firearm Permits and Homicide Rates in the United States* (2017) (available at http://aiph.aphapublications.org/doi/full/10.2105/AJPH.2017.304057).[2]

As discussed above, this Court is bound by the Fourth Circuit's decision in *Woollard*, and must dismiss this case with prejudice.

---

[2] This Court may "may properly take judicial notice of matters of public record," *United States ex rel. Oberg v. Pennsylvania Higher Educ. Assistance Agency*, 745 F.3d 131, 136 (4th Cir. 2014), including "publicly available" statistics, *Hall v. Virginia*, 385 F.3d 421, 424 n.3 (4th Cir. 2004) (citing *Papasan v. Allain*, 478 U.S. 265, 268 n.1 (1986)).

## CONCLUSION

For the reasons discussed above, Plaintiffs' Complaint should be dismissed with prejudice.

BRIAN E. FROSH
Attorney General of Maryland


___/s/_____
MARK H. BOWEN (Fed. Bar # 10197)
Assistant Attorney General
1201 Reisterstown Road
Baltimore, Maryland 21208
410-653-4226 (tel.); 410-653-4270 (fax)
mark.bowen@maryland.gov

Dated: December 7, 2020                Attorneys for Defendants